United States District Court

for the

Baltimore District of Maryland

| | |
|---|---|
| PHYLLIS MAYNOR | ) |
| 1401 Glendale Road | ) |
| Baltimore, Maryland 21239 | ) |
| | ) |
| Plaintiff | ) |
| v. | )          Civil Action No. _____ |
| | ) |
| MT. WASHINGTON PEDIATRIC | ) |
| HOSPITAL | ) |
| Serve: Sheldon J. Stein, Resident Agent | ) |
| 1708 West Rogers Avenue | ) |
| Baltimore, Maryland 21209 | ) |
| | ) |
| LINDA RYDER | ) |
| 1708 West Rogers Avenue | ) |
| Baltimore, Maryland 21209 | ) |
| | ) |
| GEORGE OPRAN | ) |
| 1708 West Rogers Avenue | ) |
| Baltimore, Maryland 21209 | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT AND JURY TRIAL PRAYER

**NOW COMES**, Phyllis Maynor, "Plaintiff," by and through her attorneys, Jessie Lyons Crawford, Esquire and the Law Office of Jessie Lyons Crawford, LLC, and hereby sues the above-captioned Defendants. In support thereof states:

## PARTIES

1.      Plaintiff Phyllis Manor is a citizen of the United States and resides in Baltimore County, Maryland. At all times relevant herein, Plaintiff was an employee of Defendant Mt. Washington Pediatric Hospital, Inc., hereinafter Defendant Mt. Washington.

1

2.      Defendant Mt. Washington is a corporation organized and existing under the laws of the State of Maryland, with its principal place of business in Baltimore County, Maryland. Mt. Washington is a major service corporation that provides local specialty pediatric care to children who are ill, injured, or in need of help. On information and belief, Mt. Washington employs more than 15 employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

3.      Defendant Linda Ryder, hereinafter Defendant Ryder is a citizen of the United States and works in Baltimore County, Maryland. Defendant Ryder is a Caucasian female. At all times relevant herein, Defendant Ryder was an employee of Defendant Mt. Washington.

4.      Defendant George Opran, hereinafter Defendant Opran is a citizen of the United States and works in Baltimore County, Maryland. Defendant Opran is a Hispanic male. At all times relevant herein, Defendant Opran was an employee of Mt. Washington.

**JURISDICTION AND VENUE**

5.      This action arises under a federal statute, 42 U.S.C. 2000e-2. Title VII is a federal law that prohibits discrimination in employment on the basis of sex, race, color, national origin, and religion, and it applies to employers with 15 or more employees, including federal, state, and local governments. Retaliation against someone who complains of discrimination or participates in an investigation involving discrimination is also illegal under Title VII of the Civil Rights Act of 1964.

6.      A substantial part of the events giving rise to the claims occurred in Baltimore County, Maryland and is covered by Maryland State Law. The Federal Court has jurisdiction of those claims as they arose out of the same incident as the Federal claims.

**Factual Allegations**

7.      The Plaintiff began working for Defendant Mt. Washington on March 07, 2011 as a Patient Account Representative II.

8.      The Plaintiff job duties included resolving problems with claims and accounts, medical bill claims, claims with insurance companies, contacting and following up with insurance companies and/or patients.

9.      On or about April 2011, not yet 30 days since the Plaintiff was hired, Ms. Linda Ryder, Director of the Patient Finance Department began to harass the Plaintiff by criticizing the way in which Plaintiff wrote, spoke, and unfairly criticized the plaintiff's work.

10.      Defendant Ryder would state to the Plaintiff that Defendant Ryder hated the way in which the Plaintiff spoke and hated the Plaintiff's voice in general.

11.      Defendant Ryder would interrupt Plaintiff while she was performing her duties to criticize the Plaintiff stating that the Plaintiff was talking too loud.

12.      Defendant Ryder would also criticize the way the Plaintiff wrote stating she could not understand Plaintiff's comments on reports.

13.      Defendant Ryder also threated to write-up Plaintiff if the Plaintiff asked any questions.

14.      Defendant Ryder's criticism and harassment was unwarranted and had no basis as the Plaintiff wrote, talked, and performed her work no different than any other employee that worked in the patient finance department following procedures for performing their tasks. No Caucasian employees or employees under forty (40) years of age induced such harsh criticism.

15.      In April 2013, Mr. George Opran was promoted from Payment Poster to Office Manager of the Patient Finance Department, and became Plaintiff's immediate supervisor.

3

16.     Once Defendant Opran became Office Manager, he joined Defendant Ryder in harassing the Plaintiff.

17.     Plaintiff had endured unwarranted criticism and harassment from both Defendant Ryder and Defendant Opran throughout her employment.

18.     On July 18, 2013 the Plaintiff asked Defendant Ryder, if the Plaintiff could make up some time that the Plaintiff had missed due to a doctor's appointment and car issues.

19.     Defendant Ryder told the Plaintiff that she could make up this time.

20.     When the Plaintiff was about to clock out at the end of her shift, she checked her phone when from behind her appeared Defendant Opran. Defendant Opran came from around the back office where the Plaintiff could not see him, stood behind the Plaintiff and yelled extremely loud into the back of the Plaintiff's head in a frightening voice.

21.     Defendant Opran began yelling at the Plaintiff shouting "No More Overtime!" Defendant Opran was visually upset and frightened the Plaintiff.

22.     The Plaintiff informed Defendant Opran that Defendant Ryder gave the Plaintiff approval to make up her lost time.

23.     On July 19, 2013 about 8:30 a.m. the Plaintiff was called into Defendant Opran's office with Defendant Ryder.

24.     Defendant Opran accused the Plaintiff of sleeping at her desk.

25.     The Plaintiff denied the accusations.

26.     Defendant Opran made childlike teasing facial expressions towards the Plaintiff that made her uncomfortable and the Plaintiff felt that Defendant Opran was instigating a reaction from the Plaintiff.

27.     Defendant Opran and Defendant Ryder then accused the Plaintiff of smiling.

4

28.     The Plaintiff stated to Defendant Opran and to Defendant Ryder that she was not smiling.

29.     Defendant Ryder then accused the Plaintiff of always yelling.

30.     The Plaintiff stated to Defendant Ryder that she was not yelling and that this is the normal volume of her voice.

31.     Defendant Opran then insulted the Planitiff by stating "why do you sound like you do. Why do you talk like that," as he twisted his face as if the Plaintiff was disgusting to him.

32.     After being insulted by her manager, the Plaintiff then stated that she could no longer stay in the meeting. The accusations made against the Plaintiff, and the hurtful words that Defendant Opran had said to her upset the Plaintiff and made her fearful of their intentions.

33.     In response to the Plaintiff's statement, Defendant Ryder yelled out for Defendant Opran to write-up the Plaintiff for leaving the building.

34.     While still in the room, the Plaintiff immediately said to both Defendant Ryder and Defendant Opran that she did not say she was leaving the building, rather that she was leaving this office in which they were meeting to go back to her desk and continue working.

35.     The Plaintiff stated to the two supervisors that the insults and bullying had to stop and the Plaintiff stated that she was ending this meeting because of their criticism about her voice that she could not help.

36.     Defendant Ryder again loudly instructed Defendant Opran to write-up the Plaintiff for leaving the building.

37.     The Plaintiff again stated that was leaving this office in order to return to her desk and continue her work because she could no longer withstand the insults and false accusations made by Defendant Opran and Defendant Ryder.

38.     Defendant Ryder said that she thought the Plaintiff said was leaving and going home.

39.     The Plaintiff said no and that she was going to her desk.  The Plaintiff believed they were attempting to instigate an angry response from the Plaintiff, and the Plaintiff made every effort to avoid such confrontation with her two supervisors.

40.     The Plaintiff then left Defendant Opran's office, at which point she became panic-stricken and was weeping, gasping for air, and hyperventilating.

41.     Frightened by the severe physical and emotional affect the impromptu meeting with Defendants Opran and Ryder had on the Plaintiff, the Plaintiff went immediately to speak with the CEO of the hospital, Mr. Sheldon Stein, in the main hospital.

42.     The Plaintiff told Mr. Stein how Defendant Ryder treated the Plaintiff since she was hired.

43.      Mr. Stein asked the Plaintiff if she spoke with the Human Resources Department ("HR").

44.     The Plaintiff stated that she had and that she spoke with Ms. Monica Atkinson, the HR Manager, as well as Ms. Mary Miller, the Vice President of the Patient Finance Department, about the inappropriate way Defendant Ryder spoke to the African American employees and employees over the age of forty and how she mistreated certain employees, including Plaintiff.

6

45.     The Plaintiff told Mr. Stein about the incident that occurred on July 18, 2013 with Defendant Opran and Defendant Ryder, and the Plaintiff stated to Mr. Stein that Mr. Orphan was bad news for the Plaintiff and the office.

46.     Mr. Stein told the Plaintiff that he was going to find out what was going on and why people could not get along and that something would be done.

47.     Mr. Stein asked if the Plaintiff wanted to stay or go home.

48.     The Plaintiff decided to go home due to being distraught over what had transpired at the meeting with Defendants Opran and Ryder. Mr. Stein then called Defendant Opran and advised him that the Plaintiff would be leaving the office for the day because of what happened and because the Plaintiff was very upset.

49.     On or about August 2013, a co-worker of the Plaintiff's Melissa Meyers who is an African American over the age of forty (40) years old and a Patient Account Representative was fired by Defendant Mt. Washington Hospital.

50.     Ms. Meyers was told that she was fired for allegedly shopping online while on the job. Ms. Meyers had denied these claims.

51.     Throughout Ms. Meyer's employment she too had been harassed in the same manner as the Plaintiff.

52.     The Plaintiff was fired for allegedly yelling at the Defendant Ophran and Defendant Ryder, an accusation that the Plaintiff denied in the meeting.

53.     The Defendant Mt. Washington did not conduct an investigation of these allegations and allowed the Plaintiff to be terminated.

54.     Ms. Meyer's was also terminated from her employment on false accusations that where never investigated and which she denied.

7

55.     Like the Plaintiff, Ms. Meyer's is a part of a protected class as she is an African American woman and is over the age of forty (40) years old.

56.     Ms. Meyer's was discriminated and harassed because of her race and age.

57.     Plaintiff has observed throughout her employment with Defendant Mt. Washington that African American employees suffer more scrutiny and harassment from Defendant Ryder and Defendant Opran than Caucasian employees.

58.     The African American employees are subject to hostile supervision and scrutiny over their work performance versus their Caucasian counterparts, although the work load and the work performance are the same for both African American and Caucasian employees.

59.     The Plaintiff has also observed throughout her employment with Defendant Mt. Washington that employees over the age of forty (40) are treated differently than other similar employees under the age of forty (40).

60.     In particular, before Plaintiff was employed with Defendant Mt. Washington, Lois Joska, a Caucasian female over the age of forty (40) years old and an HR Personnel, was fired and replaced by Ms. Monica Atkinson in the year 2010, who was under forty (40) years of age.

61.     Ms. Joska contested the false allegations made against her as well.

62.     Ms. Joska, who was over the age of forty (40) was replaced with Ms. Atkinson, who was under the age of forty (40) when she was hired by Defendant Mt. Washington.

63.     On January 29, 2014 at 4:30 p.m., the Plaintiff received an e-mail from Defendant Ryder requesting that she look at an account number and let Defendant Opran know why the account is being recommended for a write-off.

64.     Plaintiff reviewed the account and saw that she had already worked the account and had noted the account was being written off due to requested documentation not being

received per the insurance company and was not received in a timely manner per the insurance company.

65.     Plaintiff called the insurance company to verify the denial reason and what the Plaintiff could possibly do to get the claim reprocessed. The insurance representative advised that the requested documentation was not received timely. Plaintiff advised the representative that a previous representative stated that there is no timely filing limit for requested documentation if the claim itself was submitted timely, however per this representative she stated that there is a timely filing because it is a behavioral health claim. Plaintiff also asked the representative if the claim could be appealed. The representative stated that the appeal filing time limit has also expired.

66.     The Plaintiff followed company procedures and submitted the account for write-off to Defendant Ryder.

67.     Plaintiff went to the Office Manager, Defendant Opran, to explain why the account was written off.

68.     Plaintiff told Defendant Opran that Defendant Ryder sent her an e-mail requesting that the Plaintiff to explain to him why the account was being written off.

69.     After Plaintiff explained to Defendant Opran, he still did not understand and asked the Plaintiff in a condescending way why was the account being written off.

70.     Plaintiff asked Defendant Opran to review the account with the Plaintiff, from the beginning. Defendant Opran did not understand that the write off in question was standard procedure.

71.     Plaintiff gave an explanation for each activity and noted comments of the account to Defendant Opran.

72. Defendant Opran said that he would tell Defendant Ryder that the Plaintiff stated that Defendant Ryder could not read.

73. Plaintiff replied to Defendant Opran that the Plaintiff did not say that and that Defendant Ryder is the one who instructed the Plaintiff to come to Defendant Opran.

74. Mr. Orpran continued to question the Plaintiff about the account.

75. The Plaintiff replied and explained the details again to Defendant Opran.

76. Defendant Opran rejected the Plaintiff's explanation and accused the Plaintiff of incorrectly doing her job. He again attempted to get the Plaintiff upset in order to instigate a reaction from the Plaintiff.

77. The Plaintiff replied that she followed company procedure and believed that she acted correctly. Defendant Opran continued to question the Plaintiff about the account in a harsh tone as to scold the Plaintiff.

78. The Plaintiff politely explained that she will try and remedy the issue with the account tomorrow and that she only spoke with him as it was requested by Defendant Ryder.

79. The meeting with Defendant Opran occurred at the time the Plaintiff was due to sign out of work. Plaintiff then stated to Defendant Opran that she was going to return to her computer to ensure that she was logged out of the computer because she did not want to get in trouble for going overtime.

80. Defendant Opran stated that he will call a meeting so that the Plaintiff could tell Defendant Ryder that Defendant Ryder cannot read.

81. The Plaintiff replied that she does not need a meeting and that Defendant Ryder instructed the Plaintiff speak with Mr. Orphan about the account.

82. Defendant Opran continued to provoke an argument with the Plaintiff.

83. The Plaintiff informed Mr. Orphan that it is after 4:30 p.m. and that her shift had ended.

84. Plaintiff stated that she did not know what else to tell Mr. Orphan regarding the account.

85. Defendant Opran then stated that he would call a meeting so that the Plaintiff could tell Defendant Ryder that the Plaintiff was going to reprimand Defendant Ryder.

86. Defendant Opran was sarcastic, abusive and insulting to the Plaintiff and appeared to attempt to cause her to delay returning to her computer to log off.

87. Once again, the Plaintiff overlooked the sarcastic remarks made by Defendant Opran.

88. Plaintiff told Defendant Opran that she does not need a meeting but if there's going to be a meeting the Plaintiff request the presence of Ms. Miller or Mr. Stein.

89. The Plaintiff stated that she would not go to a meeting without Ms. Miller or Mr. Stein present at the meeting.

90. The Plaintiff again attempted to conclude the conversation as it was after 4:30 p.m. and no one else was in the office.

91. Defendant Opran again stated that he would call a meeting so the Plaintiff could tell Defendant Ryder that the Plaintiff was going to reprimand Defendant Ryder.

92. The Plaintiff again denied Mr. Orpan accusations.

93. The Plaintiff then politely bided Defendant Ophran a good night, logged off her computer and left the building.

94. On January 30, 2014, around 2:00 p.m. Defendant Opran announced to the staff that there was to be a staff meeting for everyone.

95.     The meeting included management staff, Defendant Ryder and Defendant Opran, and Ms. Atkinson.

96.     Ms. Atkinson conducted the meeting which addressed the company's policy on behavior and that bad behavior would not be tolerated from this point on; and that anyone who can't follow policy will face disciplinary actions.

97.     Several co-workers asked what prompted the meeting as they were confused.

98.     Ms. Atkinson replied if it doesn't pertain to you don't worry about it and that she wanted to make sure everyone understood the policy. The meeting then concluded.

99.     After the meeting, the Plaintiff went to Defendant Ryder to advise her that she did discuss the e-mail she had sent the Plaintiff with Defendant Opran as Defendant Ryder instructed the Plaintiff to do.

100.    The Plaintiff advised Defendant Ryder that Defendant Opran kept saying that the Plaintiff was suggesting that the Plaintiff was accusing Ms. Ryder of being unable to read.

101.    The Plaintiff also stated to Defendant Ryder that Defendant Opran did not understand the established procedure and policy for addressing a write off.

102.    Defendant Ryder replied that Defendant Opran may not have worked with insurance but that Defendant Opran is smart and that it just takes time to learn this job.

103.    The Plaintiff replied that she understands and just wanted to inform Defendant Ryder that she had a formal compliant based on the exchange in reviewing the account with Defendant Opran.

104.    About 3:00 p.m. Defendant Opran came to the Plaintiff's desk and requested that the Plaintiff see him in the HR Department at 4:00 p.m.

105.    The Plaintiff went to the HR Department as instructed and went into an office with Mr. Tom Ellis, the Human Resources Vice President, and Defendant Opran.

106.    Mr. Ellis told the Plaintiff that she was being terminated.

107.    The Plaintiff asked why she was being terminated.

108.    Mr. Ellis replied because the Plaintiff yelled at Defendant Opran.

109.    The Plaintiff told Mr. Ellis that Defendant Opran was lying and that Defendant Ryder and Opran were offended by her voice.

110.    Mr. Ellis told the Plaintiff that he was terminating her anyway.

111.    The Plaintiff told that she wants to fight the termination.

112.    Mr. Ellis refused to listen to the Plaintiff or ascertain the facts of what happened to warrant the termination.

113.    Mr. Ellis stated that he did not care and would proceed with terminating the Plaintiff.

114.    Plaintiff requested from Mr. Ellis the documents in the Plaintiff's file.

115.    Mr. Ellis stated that he would send it to the Plaintiff via mail.

116.    The Plaintiff asked Mr. Ellis again for all the write-ups against her. Mr. Ellis refused to give them to the Plaintiff.

117.    The Plaintiff then requested to at least see those documents.

118.    Mr. Ellis allowed the Plaintiff to view the documents while they were still in Mr. Ellis' hands only.

119.    The Plaintiff stated that she had never seen the write-ups before and did not sign any of the write-ups in her file.

120.    Mr. Ellis then looked at the papers and said "yes you did there's your signature."

13

121.    The Plaintiff told Mr. Ellis that it was not the Plaintiff's signature.

122.    Mr. Ellis said "oh well it was signed by who ever signed it because you wouldn't."

123.    The Plaintiff was never shown nor asked to sign any of the write-ups that where in her file.

124.    Ms. Atkinson then entered the room and stated that the Plaintiff needed to leave and that Ms. Atkinson would make the Plaintiff copies.

125.    The Plaintiff left the office with Ms. Atkinson who walked the Plaintiff to her desk to retrieve her belongings.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

126.    The Plaintiff has exhausted her administrative remedies. On or about May 19, 2014, Plaintiff filed with the U.S. Equal Employment Opportunity Commission ("EEOC") a timely administrative charge of harassment and discrimination against Defendant Mt. Washington. Exhibit 1.

127.    The EEOC has made a determination against the Plaintiff. See Exhibit 2.

128.    Plaintiff has received a Notice of Right to Sue from the EEOC. See Exhibit 3.

**COUNT I**
**HARASSMENT**
**(DEFENDANT MT. WASHINGTON)**

129.    Plaintiff realleges, adopts and incorporates  herein by reference each and every allegation  contained in paragraphs 1-128 inclusive.

130.    The actions of Defendant Mt. Washington constitutes harassment against the Plaintiff, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

131.    Harassment includes unwelcome conduct that is based on race, color, religion, sex, national origin, age, disability or genetic information that is severe or pervasive enough to

14

create a work environment that a reasonable person would consider intimidating, hostile, or abusive. Defendant Mt. Washington is an employer within the meaning of Title VII, 42 U.S.C. § 2000-e (b). The Plaintiff and Defendants Ryder and Opran are employees within the meaning of Title VII, 42 U.S.C. § 2000-e (f). The Plaintiff and Defendants Ryder and Opran where employees of Defendant Mt. Washington during the time of the alleged harassment.

132.    Defendant Opran was the Office Manager for the Patient Finance Department and the immediate supervisor to the Plaintiff and possessed the authority to manage, assign work, and discipline the Plaintiff.

133.    Defendant Ryder was the Director for the Patient Finance Department and the immediate supervisor to Defendant Opran. Defendant Ryder also possessed the authroity to manage, assign work and discipline the Plaintiff. Defendants Ryder's and Opran's conduct towards the Plaintiff constituted harassment that Defendant Mt. Washington knew or should have known of.

134.    The Plaintiff is a part of a protected class as she is an African American woman and is over the age of forty (40). Each and every act of harassment by Defendant Ryder and Opran was unwarranted and unneccesary and was based on the Plaintiff's age and race.

135.    Defendants Ryder's and Opran's conduct was severe or pervasive and created a work environment that a reasonable person would consider intimidating, hostive or abusive.

136.    The Plaintiff  was repeatedly falsley accused of yelling, having an annoying voice and not following procedures and polcies established by the Defendant. Plaintiff was also frieghtened by Defendant Opran on two occasion when he snuck up behind the Plaintiff yelling at the Plaintiff in her ear.

137.    When the Plaintiff was terminated she was not terminated for her duties but for the normal volume of her voice that the Plaintiff could not control, which her supervisors, Defendants Opran and Ryder, found annoying.

138.    Her work environment included Defendant Opran sneaking up behind her to surprise her by yelling and accusing her of sleeping after 4:30 p.m.

139.    She was called into meeting to goad her into an argument by accusing her of having an irritaint voice, not performing her duties, leaving the building and other sarcastic offensive comments designed to insite an argument so that the employer would have grounds to terminate the Plaintiff.

140.    The Plaintiff felt intimidated, afraid, stressed and performing her duties were a challenge due to the conduct of Defendant Opran and Defendant Ryder.

141.    The Defendants created a  work environment that was hotile and abusive to the Plaintiff and made it impossible to perform her duties to the fullest extent.

142.    Defendant Mt. Washington knew of the treatment that the Plaintiff received but failed to take immediate, appropriate and sufficient action to prevent and stop the harassment by Defendants Ryder and Opran.

143.    The Plaintiff informed both the CEO of the Hospital, Mr. Stein, and Ms. Atkinson, the HR Manager, and Ms. Miller, the Vice President of the Patient Finance Department, about the harassment of the Plaintiff by Defendants Ryder and Opran. See Factual Allegations of this Complaint.

144.    While, Mr. Stein stated that he would look into the issue, no action was taken that prevented nor reasonably addressed the repeated pervasive harassment of the Plaintiff by Defendants Ryder and Opran.

145.     Defendant Mt. Washington allowed Defendant Ryder and Opran to create a hostile work environment in which the Plaintiff was subjected to unwarranted verbal attacks and accusations to her character, work ethic, physical characteristics including allowing Defendant Ryder to state to the Plaintiff that she hated her voice, allowing Defendant Opran to accuse Plaintiff of sleeping on the job, and writing up the Plaintiff on false accusations, as fully outlined in the Facts section of this Complaint.

146.     As a direct and proximate result of Defendant Mt. Washington's actions described herein, Plaintiff has suffered from a loss of income and benefits, severe emotional distress and mental anxiety, for all of which she deserves to be compensated.

**COUNT II**
**RACE DISCRIMINATION**
**(DEFENDANT MT. WASHINGTON)**

147.     Plaintiff realleges, adopts and incorporates herein by reference each and every allegation contained in paragraphs 1-146 inclusive.

148.     The actions of Defendant Mt. Washington constitutes race discrimination against the Plaintiff, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 (a), which makes unlawful discrimination against employees on the basis of race.

149.     The actions of Defendant Mt. Washington constitutes race discrimination, which holds employers vicariously liable for the acts of racial discrimination in the workplace by an employee.

150.     Defendant Mt. Washington is an employer within the meaning of Title VII, 42 U.S.C. § 2000-e (b).

151.     The Plaintiff and Defendants Ryder and Opran are employees within the meaning of Title VII, 42 U.S.C. § 2000-e (f).

152.    The Plaintiff and Defendant Ryder and Opran where employees of Defendant Mt. Washington during the time of the alleged race discrimination.

153.    Defendant Opran was the Office Manager for the Patient Finance Department and the immediate supervisor to the Plaintiff and possessed the authority to manage, assign work, and discipline the Plaintiff.

154.    Defendant Ryder was the Director for the Patient Finance Department and the immediate supervisor to Defendant Opran. Defendant Ryder also possessed the authroity to manage, assign work and discipline the Plaintiff.

155.    Defendants Ryder's and Opran's conduct towards the Plaintiff and other employees of the same race as the Plaintiff constituted race discrimination that Defendant Mt. Washington knew or should have known of.

156.    The Plaintiff and Ms. Meyers are a part of a protected class as both are African American woman.

157.    The Plaintiff and Ms. Meyer were discriminated against and harassed because of their race.

158.    Plaintiff has observed throughout her employment with Defendant Mt. Washington that African American employees suffer more scrutiny and harassment from Defendants Ryder and Defendant Opran than Caucasian employees.

159.    The African American employees are subject to hostile supervision and scrutiny over their work performance versus their Caucasian counterparts, although the work load and the work performance are the same for both African American and Caucasian employees.

160.    Defendants Ryder's and Opran's conduct was severe and pervasive enough that it created a work environment that a reasonable person would consider intimidating, hostive and abusive for African Americans.

161.    The Plaintiff was intimidated and felt that her work environment was hostil and abusive

162.    Defendant Mt. Washington failed to take immediate, appropriate and sufficient action to prevent, and stop the racial discrimination by Defendants Ryder and Opran towards the Plaintiff and other African American employees. Instead, the Plaintiff was fired.

163.    The Plaintiff informed both the CEO of the Hospital, Mr. Stein, and Ms. Atkinson, the HR Manager, and Ms. Miller, the Vice President of the Patient Finance Department, of the harassment and racial discrimination she endured from both Defendant Ryder and Defendant Opran, which is fully outlined in the Facts section of this Complaint..

164.    While, Mr. Stein stated that he would look into the issue, no action was taken that prevented nor reasonably addressed the repeated pervasive racial harassment and discrimination of the Plaintiff by Defendants Ryder and Opran, he failed to take any action on behalf of Defendant Mt. Washington..

165.    The Defendant Mt. Washington allowed Defendant Ryder and Defendant Opran to create a hostile work environment in which the Plaintiff was subjected to unwarranted verbal attacks and accusations to her character, work ethic, physical characteristics including allowing Defendant Ryder to state to the Plaintiff that she hated her voice, allowing Defendant Opran to accuse Plaintiff of sleeping on the job, and writing up the Plaintiff on false accusations and finally terminating her on write-ups that were unsigned by the Plaintiff and unknown by the Plaintiff until the day she was given a copy simultaneous to being fired for "yelling".

166.     As a direct and proximate result of Defendant Mt. Washington's lack of actions to prevent and/or stop the race discrimination by Defendants Ryder and Opran described herein, Plaintiff has suffered from a loss of income and benefits, severe emotional distress, and mental anxiety, for all of which she deserves to be compensated.

## COUNT III
## AGE DISCRIMINATION
## (DEFENDANT MT. WASHINGTON)

167.     Plaintiff Plaintiff realleges, adoptsand incorporates herein by reference each and every allegation contained in paragraphs 1-166 inclusive.

168.     The actions of Defendant Mt. Washington constitutes age discrimination against the Plaintiff, in violation of The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 (a) (1), which makes unlawful discrimination against employees on the basis of their age.

169.     The actions of Defendant Mt. Washington constitutes age discrimination, which holds employers vicariously liable for the acts of age discrimination in the workplace by an employee.

170.     Defendant Mt. Washington is an employer within the meaning of the ADEA.

171.     The Plaintiff and Defendants Ryder and Opran are employees within the meaning of the ADEA.

172.     The Plaintiff and Defendant Ryder and Opran where employees of Defendant Mt. Washington during the time of the alleged age discrimination.

173.     Defendant Opran was the Office Manager for the Patient Finance Department and the immediate supervisor to the Plaintiff and possessed the authority to manage, assign work, and discipline the Plaintiff.

174.    Defendant Ryder was the Director for the Patient Finance Department and the immediate supervisor to Defendant Opran. Defendant Ryder also possessed the authroity to manage, assign work and discipline the Plaintiff.

175.    Defendants Ryder's and Opran's conduct towards the Plaintiff and other employees over the age of forty (40) years constituted age discrimination that Defendant Mt. Washington knew or should have known of.

176.    The Plaintiff and Ms. Joska are both over the age of forty (40) years and are a protected class under the ADEA

177.    The Plaintiff and Ms. Joska were discriminated, harassed and terminated for illegal reasons because of their age.

178.    In particular, Ms. Joska was terminated from her employment and replaced with an employee that was under the age of forty (40) years.

179.    Defendants Ryder's and Opran's conduct was severe and pervasive enough that it created a work environment that a reasonable person would consider intimidating, hostive and abusive.

180.    The Plaintiff was intimidated and felt that her work environment was hostil and abusive

181.    Defendant Mt. Washington failed to take immediate, appropriate and sufficient action to prevent, and stop the age discrimination by Defendants Ryder and Opran towards the Plaintiff.

182.    The Plaintiff informed both the CEO of the Hospital, Mr. Stein, and Ms. Atkinson, the HR Manager, and Ms. Miller, the Vice President of the Patient Finance

Department, of the harassment and age discrimination she endured from both Defendant Ryder and Defendant Opran. See Factual Allegations of this Complaint.

183.    While, Mr. Stein stated that he would look into the issue, no action was taken that prevented nor reasonably addressed the repeated pervasive age harassment and discrimination of the Plaintiff by Defendants Ryder and Opran. Instead, the Defendant fired the Plaintiff.

184.    The Defendant Mt. Washington allowed Defendant  Defendant's Ryder and Ophran to create a hostile work environment in which the Plaintiff was subjected to unwarranted verbal attacks and accusations to her character, work ethic, physical characteristics including allowing Defendant Ryder to state to the Plaintiff that she hated her voice, allowing Defendant Opran to accuse Plaintiff of sleeping on the job, and writing up the Plaintiff on false accusations.

185.    As a direct and proximate result of Defendant Mt. Washington's lack of actions to prevent and/or stop the age discrimination by Defendants Ryder and Opran described herein, Plaintiff has suffered from a loss of income and benefits, severe emotional distress, and mental anxiety, for all of which she deserves to be compensated.

## COUNT IV
## RETALIATION
## (DEFENDANT MT. WASHINGTON)

186.    Plaintiff realleges, adopts and incorporates herein by reference each and every allegation contained in paragraphs 1-185 inclusive.

187.    The actions of Defendant Mt. Washington constitutes retaliation against the Plaintiff, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3 (a), which makes unlawful retaliation against employees for opposing an unlawful employment practice.

188.    The Plaintiff engaged in protected activity by reporting to the CEO of the Hospital, Mr. Stein, and Ms. Atkinson, the HR Manager, and Ms. Miller, the Vice President of

the Patient Finance Department, of the harassment and discrimination she endured from both Defendant Ryder and Defendant Opran as fully described in the Facts of this Complaint.

189.    Because Defendant Mt. Washington failed to prevent the Defendant's harrassment of the Plaintiff, the Plaintiff was left to her own devices to try to prevent Defendant Ryder and Defendant Opran from further attacks on the Plaintiff.

190.    Thus, when Defendants Opran and Ryder requested a meeting with the Plaintiff she requested that someone be present to witness the exchange expecially because they kept accusing her of yelling. The request was declined.

191.    The Planitiff also engaged in protected activity when she demanded the presence of CEO Mr. Stein or VP Ms. Miller at a meeting that Defendant Ryder and Opran demanded the the Plaintiff to attend for further harrassment. Due to the previous harassment the Plaintiff had endured at private meeting with Defendants Ryder and Opran, the Plantiff was in her right to request the presences of higher rank employers in order to observe the exchange.

192.    The Plaintiff again engaged in protected activity when she challenged her termination by Mr. Ellis. The Plaintiff had a right to claim that her termination was based on false accusation and to demand that the accusations and write-ups be investigated.

193.    As a result of the Plaintiff engaging in these protected activity, Plaintiff was subjected to further harassment and termination.

194.    Mr. Ellis gave no legitimate basis for the termination of the Plaintiff's employement.

195.    In fact, the Defendant challenged the Plaintiff's attempt to secure unemployment and gave the reason for termination as "yelling".

196.    The write-ups against Plaintiff were based on false accusations. The write-ups where never brought to the attention of the Plaintiff and the Plaintiff was never asked to sign any of the write-ups, and in turn the Plaintiff never refused to sign any write-ups because she was never aware of them.

197.    Plaintiff had worked for Defendant Mt. Washington for two years, and was suddenly and abruptly terminated based on false accusations that was not investigated for its truth.

198.    Plaintiff's protected activity and adverse treatment towards her and subsequent termination are casually related.

199.    Defendant Mt. Washington intentionally, willfully, and wantonly retaliated against Plaintiff in response to her complaints of harassment and false accusations of her work performance and character in violation of Title VII.

200.    As a direct and proximate result of Defendant Mt. Washington's conduct described herein, Plaintiff has suffered from a loss of income and benefits, severe emotional distress and mental anxiety, for all of which she deserves to be compensated.

## COUNT V
## NEGLIGENT HIRING/RETENTION
## (DEFENDANT MT. WASHINGTON)

201.    Plaintiff  realleges, adoptsand incorporates herein by reference each and every allegation contained in paragraphs 1-200 inclusive.

202.    At all relevant times, the Plaintiff was employed by Defendant Mt. Washington.

203.    Defendants Ryder's and Opran's harassment, discrimination and retaliatory actions directed against the Plaintiff were acts known by Defendant Mt. Washington, accepted by Defendant Mt. Washington and allowed to occur repeatedly without any disciplinary actions agsint Defendants Ryder and Opran.

204.    The Plaintiff informed both the CEO of the Hospital, Mr. Stein, and Ms. Atkinson, the HR Manager, and Ms. Miller, the Vice President of the Patient Finance Department, of the harassment and discrimination she endured from both Defendant Ryder and Defendant Opran. See Factual Allegations of this Complaint.

205.    While, Mr. Stein stated that he would look into the issue, no action was taken that prevented nor reasonably addressed the repeated pervasive harassment and discrimination of the Plaintiff by Defendants Ryder and Opran.

206.    Mr. Stein witnessed the suffering of the Plaintiff and sent her home when she was crying in his office which was caused by Defendants Ryder and Opran.

207.    Defendant Mt. Washington knew or should have known that the Plaintiff was suffering emotionally and mentally from the harassing acts perpetrated by Defendants Ryder and Opran, but failed to take any reasonable steps to prevent and end Defendants Ryder and Opran's actions.

208.    At all relevant times, Defendants Ryder and Opran were employees of Defendant Mt. Washington and was acting within the scope of their employment when they committed the harassment of the Plaintiff.

209.    Defendand Mt. Washington owed a duty of care to the Plaintiff as the Plaintiff's employer and to provide a safe work environment, to hire and retain supervisors that will not harrass its employees and to prevent any harassment of the Plaintiff that it knows of or should have known.

210.    Defendant Mt. Washington failed to provide the duty of care required by law to.

211.    As a direct and proximate result of Defendant Mt. Washington's breach, the Plaintiff has suffered financially, physically and emotionally.

**COUNT VI**
**DEFAMATION**
**(DEFENDANTS OPRAN, RYDER AND MT. WASHINGTON)**

212.     Plaintiff realleges, adopts and incorporates herein by reference each and every allegation contained in paragraphs 1-211 inclusive.

213.     Defendant Opran and Defendant Ryder continually made false accusations about the Plaintiff and wrote-up the Plaintiff with false allegations of misconduct.

214.     Defendant Opran falsely accused the Plaintiff of sleeping at her desk and yelling at him, which exposed the Plaintiff to scorn amongst her superiors and deterred Plaintiff's employers from wanting to continue dealing with the Plaintiff in her employment.

215.     Defendant Opran's false statement was communicated to Defendant Ryder and Mr. Ellis.

216.     Defendant Opran's false accusation that Plaintiff had yelled at her supervisors was damaged her reputation thereby harming to the Plaintiff, and caused the Plaintiff to be fired as a result of Defendant Opran's false statement.

217.     Defendant Ryder falsely accused the Plaintiff of always yelling and leaving the building during work hours, which exposed the Plaintiff to scorn from her superiors.

218.     Defendant Ryder's false accusation that the Plaintiff always yelled and leaving the building was communicated to Defendant Opran.

219.     Both Defendant Ryder and Opran wrote-up Plaintiff on false allegations. The write-pus where never brought to the attention of the Plaintiff, and the Plaintiff was never asked to sign any write-ups and never refused to sign any write-pus because she was unaware of there existance. The write-ups where seen by Mr. Ellis and other supervisors who believed the

statements made about the Plaintiff. The write-ups where reputation harming and ultimately contributed to the Plaintiff's termination of her employment.

220.    The Plaintiff was terminated from her position on January 30, 2014 and was told by Mr. Ellis that the reason for her termination was because she yelled at Defendant Opran and that she had prior disciplinary write-ups that were signed by the Plaintiff.

221.    The Plaintiff denied the accusation and stated that Defendant Opran had made a false statement agasint her and that the signature Mr. Ellis said was her signature was not hers.

222.    Mr. Ellis then stated to the Plaintiff that he was "terminating her employment anyway" despit whether the accusation against the Plaintiff was true or false, and despite whether she knew of any prior infractions that were not signed by her.

223.    The Plaintifff expressed to Mr. Ellis that she was challenging her termination, and then  requested to review the write-up against her in her file.

224.    After much protest, Mr. Ellis finally allowed the Plaintiff to review her write-ups, but only while still in his hand.

225.    When Plaintiff stated that she did not receive or sign any write-ups, Mr. Ellis appeared to be taken off guard, but quickly brushed it off and stated that he was firing the Plaintiff anyway.

226.    Mr. Ellis reason for terminating the Plaintiff was based on a defamatory statement made by Defendant Opran and Defendant Ryder that wre relaid to Mr. Ellis by Defendant Ryder and Opran.

227.    Mr. Ellis believed Defendants Ryder's and Opran's defamatory statements which caused the Plaintiff to be fired.

228.    Defendant Ryder and Defendant Opran knew these statements to be defamatory and that such accusations would subject the Plaintiff to unwarranted emotional injury, damages, humiliation, public scorn and serious interfereance with the Plaintiff's continued employment at Mt. Washington Pediatric Hospital.

229.    As a direct and proximate result of Defendant Mt. Washington's dafamatory statements, the Plaintiff has suffered financially, physically and emotionally.

230.    Defendants Ryder and Opran made all of the defamatory statements mentioned in this Count and elsewhere in this complaint intentionally and with deliberate hatred of and spite towards the Plaintiff, with the express intention of injuring her and damaging her as alleged herein, knowing with full knowledge that these false statements and false accusations of misconduct would make it impossible for the Plaintiff to maintain her employement. The Plaintiff is therefore entitled to claim punitive damages.

## COUNT VII
## WRONGFUL DISCHARGE
## (DEFENDANT MT. WASHINGTON)

231.    Plaintiff realleges, adopts and incorporates herein by reference each and every allegation contained in paragraphs 1-230 inclusive.

232.    The Plaintiff was terminated from her position on January 30, 2014 and was told by Mr. Ellis that the reason for her termination was because she yelled at Defendant Opran.

233.    The Plaintiff denied the accusation and stated that Opran did not like the sound of the Plaintiff's voice and frequently commented that the Plaintiff was yelling and even question the sound of her voice in a meeting stating to her "why do you sound like you do why do you talk like that?" Mr. Opran questioned the Plaintiff's voice volume in a disgruntled tone indicating that Mr. Opran strongly disliked the sound of the Plaintiff's voice.

234.     Constitutional provisions and principles also provide clear public policy mandates, under which a termination may be grounds for a wrongful discharge claim. In *DeBleecker v. Montgomery County*, 292 Md. 498, 438 A.2d 1348 (1982), the Court of Appeals held that the common law rule that an at-will public employee may be discharged at any time was inapplicable if the discharge was made as a result of an employee's exercise of his constitutionally protected First Amendment rights. *See Wholey v. Sears Roebuck*, 863 A2d 482, 370 Md. 38 (2002).

235.     The Plaintiff was fired because she exercised her constitutional right to free speech which is a violation of an established public policy for which there is no remedy.

236.     As a direct and proximate result of Mr. Ellis's and Defendant Mt. Washington's wrongful discharge of the Plaintiff, the Plaintiff has suffered finacially, emotionally and physically.

## COUNT VIII
## DAMAGES

237.     As a direct and proximate result of Defendants' conduct, plaintiff suffered the following injuries and damages.

1) For back pay with prejudgment interest and all the fringe benefits to which she is entitled;

2) Front pay and benefits to the extent reinstatement is not feasible;

3) For compensatory damages for Plaintiff's non-economic injuries in an amount authorized by Title VII and State Law up to 1.5 million dollars;

4) Plaintiff suffered mental anguish and emotional distress in the form of panic attacks, stress, anxiety, shortness of breath, hyperventilation, depression, embarrassment, humiliation and grief leading to uncontrollable weeping.

29

5) For an award of reasonable costs and attorneys fees for causing the Plaintiff to prosecute this case; and

6) For any and all other equitable and legal relief to which Plaintiff appears entitled;

7) Punitive damages to punish and deter Defendant Mt. Washington from future acts of employment discrimination in an amount authorized by Title VII and the State Law.

## COUNT IX
## ATTORNEY FEES

Plaintiff is entitled to an award of attorney fees and costs under Title VII, 42 U.S.C. § 2000e-5(k) and pursuant to other statutes under which this suit is brought.

**WHEREFORE,** Plaintiff demands judgment against the Defendants.

August 25, 2014                              Respectfully submitted,


                                   _____S/S_____
                                   Jessie Lyons Crawford, Esquire (#25247)
                                   Law Office of Jessie Lyons Crawford, LLC
                                   2601 Maryland Avenue
                                   Baltimore, Maryland  21218
                                   Phone:  (410) 662-1230
                                   Fax:  (410) 662-1238
                                   attorneyjlcrawford@verizon.net
                                   Attorney for Plaintiff


## JURY TRIAL PRAYER

The Plaintiff prays a jury trial on the issues in this case.


                                   _____S/S_____
                                   Jessie Lyons Crawford, Esquire (#25247)

30