IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
PHYLLIS MAYNOR                *
                              *
v.                            *    Civil Action No. WMN-14-2741
                              *
MT. WASHINGTON PEDIATRIC      *
HOSPITAL et al.               *
                              *
  *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *
```

**MEMORANDUM**

Before the Court is a motion to dismiss filed by Defendants Mount Washington Pediatric Hospital (Mt. Washington), Linda Ryder, and George Opran.  ECF No. 3.  The motion is fully briefed.  Upon review of the briefing and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that the motion should be granted.

Plaintiff Phyllis Maynor is an African-American woman who began working for Defendant Mt. Washington in March of 2011 as a patient account representative.  She was forty-nine years old at the time.  Her immediate supervisor was Defendant Linda Ryder, the Director of the Patient Finance Department.  Within a month of Plaintiff's hire, she alleges that Ryder began to harass her by "criticizing the way in which Plaintiff wrote, spoke, and unfairly criticized the [P]laintiff's work."  Compl., ECF No. 1 ¶ 9.  Much of the criticism appears to have centered on Plaintiff's speaking voice: Ryder "hated the way in which the

Plaintiff spoke and hated the Plaintiff's voice in general," <u>id.</u> ¶ 10; complained that Plaintiff "was talking too loud," <u>id.</u> ¶ 11; and "accused Plaintiff of always yelling." <u>Id.</u> ¶ 29.[1]

In April 2013, Defendant George Opran was promoted to Office Manager of the Patient Finance Department and thus became Plaintiff's immediate supervisor. Plaintiff alleges that he quickly joined Ryder in harassing her. Examples of his harassing behavior included: that he once "yelled extremely loud into the back of the Plaintiff's head in a frightening voice," <u>id.</u> ¶ 20, he falsely accused her of sleeping at her desk, <u>id.</u> ¶ 24, he "made childlike teasing facial expressions toward the Plaintiff that made her uncomfortable," <u>id.</u> ¶ 26, and he insulted her by stating "'why do you sound like you do. Why do you talk like that.'" <u>Id.</u> ¶ 31. Plaintiff also describes an incident that took place on the morning of July 19, 2013, where she was called into Opran's office and Opran and Ryder insulted her and attempted "to instigate an angry response" from her. <u>Id.</u> ¶ 39.

On January 29, 2014, another confrontation occurred between Plaintiff and Opran and Ryder that led to the termination of Plaintiff's employment the next day. Plaintiff received an

---

[1] Plaintiff states in her Opposition that other employees in her department talked in a loud voice throughout the work day but also explains that her voice "naturally carries." ECF No. 8 at 13.

email from Ryder requesting that she explain to Opran why a
particular patient account was being recommended for a write-
off.  Plaintiff attempted to provide the explanation to Opran,
but Opran continued to question her about the account and began
to falsely accuse Plaintiff of saying that "Ryder could not
read." Id. ¶ 72.  Plaintiff opines that Opran was again trying
to provoke an argument with Plaintiff.  Id. ¶ 82.

Plaintiff was terminated the next day by Tom Ellis, the
Human Resources Vice President, and, when she asked why, was
told it was because she had yelled at Opran.  Id. ¶ 108.
Plaintiff told Ellis "that Opran was lying and that Defendant
Ryder and Opran were offended by her voice," id. ¶ 109, but
Ellis stated that he was terminating her anyway.  Id. ¶ 110.
Ellis also showed her several "write-ups" from her personnel
file that Ellis represented had been signed by Plaintiff.
Plaintiff denied that she had ever signed or even seen those
documents before the day that her employment was terminated.

Based upon these allegations, Plaintiff filed a Complaint
on August 25, 2014, asserting claims of "Harassment" under Title
VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §
2000e-2 (Count I); "Race Discrimination" under Title VII (Count
II); "Age Discrimination" under the Age Discrimination in
Employment Act (ADEA), 29 U.S.C. § 623(a)(1); "Retaliation"
under Title VII (Count IV), and various state law claims (Counts

3

V to VII).  Defendants have moved to dismiss the Complaint in
its entirety on the grounds that the Court lacks jurisdiction
over Plaintiff's Title VII and ADEA claims because she failed to
first exhaust her administrative remedies before filing suit
and, if those federal claims are dismissed, the Court should
decline to exercise supplemental jurisdiction over the remaining
state law claims.[2]

Because the failure to exhaust administrative remedies
deprives a federal court of subject matter jurisdiction over a
plaintiff's claims, the exhaustion argument must be analyzed
under Rule 12(b)(1) of the Federal Rules of Civil Procedure.
Jones v. Calvert Group, Ltd., 551 F.3d 297, 300-01 & n. 2 (4th
Cir. 2009).  Generally, "questions of subject matter
jurisdiction must be decided 'first, because they concern the
court's very power to hear the case.'"  Owens-Illinois, Inc. v.
Meade, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (quoting 2 James
Wm. Moore et al., Moore's Federal Practice § 12.30[1] (3d ed.
1998)).  The plaintiff always bears the burden of demonstrating
that subject matter jurisdiction properly exists in federal
court.  See Evans v. B.F. Perkins Co., a Div. of Standex Int'l
Corp., 166 F.3d 642, 647 (4th Cir. 1999).  Dismissal for lack of

---

[2] Defendants also challenge each claim on its merits under Rule
12(b)(6) of the Federal Rules of Civil Procedure.  Because the
Court finds it is without jurisdiction over the federal claims,
it need not reach these challenges on the merits.

subject matter jurisdiction is appropriate, however, "only if
the material jurisdictional facts are not in dispute" and the
defendant is "entitled to prevail as a matter of law." Id.  In
its analysis, the court should "regard the pleadings as mere
evidence on the issue, and may consider evidence outside the
pleadings without converting the proceeding to one for summary
judgment." Evans, 166 F.3d at 647.

     It is well established that, "[b]efore a plaintiff may file
suit under Title VII or the ADEA, [s]he is required to file a
charge of discrimination with the EEOC." Jones, 551 F.3d at 300
(citing 42 U.S.C.A. § 2000e-5(f)(1) for the Title VII
requirement and 29 U.S.C.A. § 626(d) for the ADEA requirement).
A charge is sufficient "only if it is 'sufficiently precise to
identify the parties, and to describe generally the action or
practices complained of.'" Chacko v. Patuxent Inst., 429 F.3d
505, 508 (4th Cir.2005) (quoting 29 C.F.R. § 1601.12(b) (2004)).
Furthermore, the scope of the plaintiff's right to file a
federal lawsuit is determined by the charge's contents. See
Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir.
2002). "Only those discrimination claims stated in the initial
charge, those reasonably related to the original complaint, and
those developed by reasonable investigation of the original
complaint may be maintained in a subsequent Title VII [or ADEA]

lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d
954, 963 (4th Cir. 1996).

The Fourth Circuit has emphasized that "[t]he filing of an
administrative charge is not simply a formality to be rushed
through so that an individual can quickly file his subsequent
lawsuit" but it serves several important purposes. Chacko, 429
F.3d at 510. First, an administrative charge provides notice to
the employer of the alleged discrimination and gives it an
initial opportunity to voluntarily and independently investigate
and resolve the alleged discriminatory actions. Id. Second, it
initiates agency-monitored settlement, the primary way that
claims of discrimination are resolved. The exhaustion
requirement reflects "'a congressional intent to use
administrative conciliation as the primary means of handling
claims, thereby encouraging quicker, less formal, and less
expensive resolution of disputes.'" Id. (quoting Chris v.
Tenet, 221 F.3d 648, 653 (4th Cir. 2000)). In establishing this
administrative process, Congress recognized that "the EEOC has
considerable expertise in the area of employment discrimination,
and is thus better equipped to implement Title VII's goals" than
are the courts. Id.

While noting the importance of the exhaustion requirement,
the Fourth Circuit has also cautioned that this requirement
should not become a "tripwire for hapless plaintiffs" and is not

intended to be an "insurmountable barrier[ ] to litigation" resulting from "overly technical concerns." Sydnor v. Fairfax Cnty., Va., 681 F.3d 591, 594 (4th Cir. 2012). Thus, "'[d]ocuments filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies.'" Id. (quoting Fed. Express Corp. v. Holowecki, 552 U.S. 389, 406 (2008)). Despite this liberal construction, however, the Court determines that it lacks subject matter jurisdiction over Plaintiff's claims.

In her Complaint, Plaintiff represented that she exhausted her administrative remedies by filing "a timely administrative charge of harassment and discrimination against Defendant Mt. Washington" on or about May 19, 2014. ECF No. 1 ¶ 126. What Plaintiff actually did on May 19, 2014, was to submit an "Intake Questionnaire" to the EEOC. The Questionnaire included a question asking for the "reason (basis) for your claim of employment discrimination?" and provided boxes to be checked including, inter alia: race, sex, and retaliation. Plaintiff, however, checked none of the boxes but instead, where the form left a space to provide "Other reason (basis) for discrimination," Plaintiff responded "unexplained motives and reason by manager." ECF No. 8-1 at 2. The form also asked Plaintiff to identify "[w]hat happened to you that you believe

7

was discriminatory?," including "the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you" and she responded simply "April 2013" and "George Opran."  Id.

Her complete response to the question, "Why do you believe these actions were discriminatory?" was as follows:

> I was constantly harassed, whether I did my work,
> w[h]ether I asked questions[.]  False statement was
> used without my knowledge as write-ups to railroad me
> out of a job.  The actions of the manage[r] were never
> investigated when I pleaded they were not true.  I was
> told I was being terminated anyway.

Id.  Her complete response to the question, "What reason(s) were given to you for the acts you consider discriminatory?" was:

> There was no reason given, I consider the tactics of
> George Opran was and is discriminatory in the worst
> form and practice, which is the hidden harm to prove
> discrimination.

Id.  Finally, when asked whether she wanted to file a charge at that time, instead of checking that box "I want to file a charge of discrimination," she indicated "I want to talk to an EEOC employee before deciding whether to file a charge.  I understand that by checking this box, I have not filed a charge with the EEOC.  I also understand that I could lose my rights if I do not file a charge in time."  Id. at 4.

Plaintiff represents in her Opposition that she "did subsequently speak with an EEOC employee and from that meeting

an EEOC charge was consequently opened." ECF No. 8 at 5.

Plaintiff provides no information regarding the substance of

that conversation but, apparently, Plaintiff said nothing in

that conversation to clarify the nature of her discrimination

claim. On May 30, 2014, the EEOC sent Plaintiff a letter

stating that, while the questionnaire that Plaintiff submitted

"constitutes a charge of discrimination," and "[y]ou alleged you

were subjected to harassment and were subsequently discharged;

[], you failed to provide a discriminatory basis for the

employer's actions." ECF No. 1-2 at 1. The letter further

explained,

> EEOC processes claims where an individual alleges
> being treated differently and/or less favorably
> because of the individual's race, color, sex, age,
> national origin, religion or disability than others of
> a different race, sex, color, etc. If an individual
> is being singled out and treated adversely from a
> group of individual's [sic] regardless of race, sex,
> color etc., then this treatment is probably unfair but
> would not involve prohibited employment
> discrimination. Claims of unfair treatment in the
> workplace or poor personnel practices are not
> allegations or claims that EEOC can address when they
> do not involve prohibited employment discrimination.

Id.

In arguing that Plaintiff failed to exhaust her

administrative remedies, Defendants first contend that "[a]n

Intake Questionnaire is not a charge of discrimination." ECF

No. 3-1 at 5 (citing Balas v. Huntington Ingall, 711 F.3d 401,

406 (4th Cir. 2013)). The issue in Balas, however, was whether

the district court should have considered the contents of the
plaintiff's intake questionnaire and letters that were submitted
with the questionnaire <u>in addition</u> to her formal EEOC charge.
<u>Id.</u>  Citing the intended purposes of the exhaustion requirement
discussed above, the Fourth Circuit held that, given that the
employer was never apprised of the contents of the questionnaire
or letters, they could not serve to further the goals of putting
the employer on notice of her claims or encouraging
conciliation.  <u>Id.</u> at 408.  Here, because the EEOC appears to
have treated the questionnaire as a formal charge, <u>see</u> ECF No.
1-2 ("Because the document you submitted constitutes a charge of
discrimination . . ."), the Court will treat it as such for the
purposes of the pending motion.  <u>See</u> <u>Fed. Express Corp. v.</u>
<u>Holowecki</u>, 552 U.S. 389, 404 (2008) (holding that the EEOC's
determination that the plaintiff's intake questionnaire could be
deemed a charge was "a reasonable exercise of its authority to
apply its own regulations and procedures in the course of the
routine administration of the statute it enforces").[3]

Assuming that the Intake Questionnaire did function as a
formal charge, it still provided no clue, whatsoever, as to the
basis on which Plaintiff claims discrimination.  While Plaintiff

---

[3] Defendants represent that they never received a copy of the
Intake Questionnaire prior to the institution of this suit, ECF
No. 9 at 3, calling into question if the Questionnaire actually
served the functions of a formal charge in this instance.  The
Court will assume, arguendo, that it did.

used the words "discriminatory" and "discrimination," she gives

no indication as to whether that "discrimination" was based on

her sex, age, race, color, or retaliation for some protected

activity, or some other basis altogether.[4]  After reviewing the

Intake Questionnaire (and after whatever conversation Plaintiff

may have had with the EEOC employee), the EEOC reasonably

concluded that Plaintiff was complaining that she was treated

unfairly, but not on the basis of her membership in any

protected class.  ECF No. 1-2.  Where the EEOC charge fails to

provide the particular basis on which the plaintiff believes he

or she was discriminated, courts have routinely found that

failure to be fatal to a later-filed lawsuit asserting a claim

of discrimination on that basis.  See, e.g., Miles v. Dell,

Inc., 429 F.3d 480, 491-92 (4th Cir. 2005) (affirming dismissal

of retaliation claim where the plaintiff "did not check the

retaliation box on her charge form, and the narrative explaining

her charge made no mention of retaliation"); Cohens v. Maryland

Dept. of Human Res., 933 F. Supp. 2d 735, 743 (D. Md. 2013)

(dismissing retaliation claim where the plaintiff "neither

---

[4] In the "Personal Information" portion of the Questionnaire,
Plaintiff did provide her date of birth as May 6, 1961, her race
as Black or African American, her sex as female, and her
national origin as the United States.  ECF No. 8-1 at 1.  One
could not be expected to parse from that personal information
the nature of her discrimination charge in that she is not
asserting a claim of discrimination based upon gender or
national origin.

checked the 'retaliation' box on her EEOC charge nor alleged retaliation in the charge's factual summary"); Bouther v. Good Samaritan Hosp. of Maryland, Inc., Civ. No. 13-2287, 2014 WL 1681992, at *3 (D. Md. Apr. 28, 2014) (dismissing claims of color, sex, and age discrimination where boxes on the charge for those classes were not checked and the narrative gave "no hint that these were the purported bases for the alleged discrimination).

In opposing Defendants' motion on the exhaustion issue, Plaintiff relies primarily on Sydnor v. Fairfax County.  That case, however, is readily distinguishable.  In Sydnor, the plaintiff filed an administrative charge with the EEOC claiming that she had been discriminated against on the basis of her disability by being denied a reasonable accommodation.  681 F.3d at 594.  She identified her disability as "limited walking ability" and the accommodation that she identified in her EEOC questionnaire was "light duty work."  In her subsequent lawsuit, she asked for the accommodation of full duty with the assistance of a wheelchair.  Id.  The defendant argued that this accommodation was so "fundamentally different" from the one mentioned in the questionnaire that her discrimination claim should be dismissed for the failure to exhaust her administrative remedies.  Id.  The district court granted that relief.

In reversing that decision, the Fourth Circuit noted that,

> Plaintiff's administrative and judicial claims []
> focused on the same type of discrimination. Her EEOC
> charge alleged that she "was denied a reasonable
> accommodation" and her formal complaint likewise
> claimed that the County "has refused to accommodate
> her physical impairments." Consequently, the
> [defendant] was on notice from the beginning that it
> was accused of not providing a disabled plaintiff with
> a reasonable accommodation.

Id. at 595. In reaching that conclusion, the Fourth Circuit distinguished the case before it from situations where "'the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex.'" Id. (quoting Jones, 551 F.3d at 300). In the case then before it, "the type of prohibited action alleged — discrimination on the basis of disability by failing to provide a reasonable accommodation — remained consistent throughout." Id.

Accordingly, the Court finds that Plaintiff failed to exhaust her administrative remedies and the Court is without jurisdiction over her Title VII and ADEA claims. Concluding that it lacks subject matter over Plaintiff's federal claims and given the early stage of these proceedings, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims. See 28 U.S.C. § 1367(c)(3) (providing that the district court may decline to exercise supplemental jurisdiction over state law claim if "the district court has

dismissed all claims over which it has original jurisdiction");
University Gardens Apts. Joint Venture v. Johnson, 419 F. Supp.
2d 733, 741-42 (D. Md. 2006) (exercising that discretion and
dismissing case).

For the above stated reasons, the Court concludes that
Defendants' motion should be granted and this case dismissed.
Because the federal claims will be dismissed for lack of subject
matter jurisdiction, they will be dismissed without prejudice.
Plaintiff's state law claims will also be dismissed without
prejudice.  A separate order will issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge


DATED: March 17, 2015